UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KONECRANES, INC., <br>     *Plaintiff*, <br> <br>     *vs*. <br> <br> BRIAN SCOTT DAVIS AND INDUSTRIAL <br> & CRANE SERVICES, INC., <br>     *Defendants*. | ) <br> ) <br> ) <br> )    1:12-cv-01700-JMS-MJD <br> ) <br> ) <br> ) <br> ) |

## ORDER

Presently pending before the Court is a Motion to Dismiss Counts III and IV of Plaintiff's Complaint for Injunctive Relief and Damages filed by Defendants Brian Scott Davis and Industrial Crane Services, Inc. ("ICS"). [Dkt. 14.] For the following reasons, the Court **GRANTS** the motion.

## I.
### STANDARD OF REVIEW

The Federal Rules of Civil Procedure impose only a notice-pleading requirement for complaints. Fed. R. Civ. Pro. 8. Thus, "[s]pecific facts are not necessary; the [plaintiff] need only 'give the defendant fair notice of what the…claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A motion filed under Federal Rule of Civil Procedure 12(b)(6) asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 570).

Although the requirements of notice pleading are minimal, a plaintiff can "plead himself out of court." *Early v. Bankers Life & Casualty Co.*, 959 F.2d 75, 79 (7th Cir. 1992). In other words, if a plaintiff pleads facts that show he is not entitled to relief, his claim is subject to

dismissal. *See Jefferson v. Ambroz*, 90 F.3d 1291, 1296 (7th Cir. 1996) ("[I]f a plaintiff chooses to 'plead particulars, and they show he has no claim, then he is out of luck – he has pleaded himself out of court'").

## II.
### COMPLAINT ALLEGATIONS

The following allegations are accepted as true for purposes of the Court's ruling only: Plaintiff Konecranes, Inc. ("Konecranes") provides lifting equipment and services to various clientele including "manufacturing and process industries, shipyards, ports and terminals." [Dkt. 1 at 2, ¶ 9.] Specifically, Konecranes "offers maintenance solutions for all industrial crane brands, port equipment and machine tools." [*Id.* at 2, ¶ 10.] In order to serve its customers, Konecranes enters into agreements with subcontractors to assist it in the performance of the maintenance agreements it has entered into. [*Id.* at 4, ¶ 17.] ICS has served as one such subcontractor for Konecranes, [*id.* at 5, ¶ 18], although ICS and Konecranes also compete for customers to enter into maintenance agreements with them, [*id.* at 5, ¶ 19].

Mr. Davis was employed at Konecranes as a Service Manager. [*Id.* at 2, ¶¶ 12-13.] On December 27, 1999, Mr. Davis and Konecranes entered into an Employee Noncompetition and Confidentiality Agreement (the "Agreement"), which contained provisions regarding keeping certain Konecranes information confidential. [*Id.* at 2-4, ¶¶ 14-16.] Mr. Davis and ICS both performed work for Konecranes on various maintenance and service contracts with Nucor Sheet Metal Group ("Nucor") and Steel Dynamics Incorporated ("SDI"). [*Id.* at 5, ¶ 20.] In May 2012, Mr. Davis resigned from Konecranes and began working for ICS in management, although Konecranes alleges that he later switched to a sales position. [*Id.* at 2, ¶ 12 and 5, ¶¶ 21-22.] Since Mr. Davis began working for ICS, Nucor has cancelled Purchase Orders with Konecranes and SDI did not renew an existing Purchase Order with Konecranes. [*Id.* at 5, ¶ 25.] Instead,

both have contracted with ICS to perform the work. [*Id.*] Konecranes alleges that ICS was able to obtain business from Nucor and SDI because "[Mr.] Davis used Konecranes Confidential Information, including information about costs, profits, pricing, markets, sales, lists of customers and customer contracts." [*Id.* at 5-6, ¶ 27.] Konecranes also alleges that Mr. Davis and ICS have been actively soliciting other customers to "change their crane maintenance provider from Konecranes to ICS." [*Id.* at 6, ¶ 29.]

Konecranes asserts claims for: (1) breach of contract, [*id.* at 6-7, ¶¶ 35-42]; (2) breach of fiduciary duty and/or duty of loyalty, [*id.* at 7-8, ¶¶ 43-50]; (3) tortious interference with contractual relationships, [*id.* at 8, ¶¶ 51-56]; and (4) unfair competition, [*id.* at 9, ¶¶ 57-61]. Mr. Davis and ICS move to dismiss the tortious interference with contractual relationships and unfair competition claims. [Dkt. 14.]

### III.
#### DISCUSSION

**A. Tortious Interference With Contractual Relationships**

In moving to dismiss Konecranes' tortious interference with contractual relationships claim, Mr. Davis and ICS argue that Konecranes fails to assert a necessary element of a tortious interference claim – that Mr. Davis' and ICS's actions were unjustified. [Dkt. 15 at 5-6.] Mr. Davis and ICS also assert that Konecranes alleges facts that actually "undermine any allegation that [Mr.] Davis and ICS acted with the exclusive purpose of injuring Konecranes." [*Id.* at 6 (emphasis in original).] Konecranes responds that it has adequately alleged that Mr. Davis and ICS acted without justification, relying upon *Best Flooring, Inc. v. BMO Harris Bank, N.A.*, 2013 U.S. Dist. LEXIS 7096 (S.D. Ind. 2013). [Dkt. 20 at 2-5.] Mr. Davis and ICS reply that the requirement that a defendant act without justification is actually a heightened pleading requirement applying only to claims of tortious interference with contractual relations, which

3

protects defendants "who are merely pursuing their own legitimate business interests from being sued by a competitor each time there is perceived 'interference' with the competitor's business." [Dkt. 21 at 4.]

Under Indiana law, the elements of a claim for tortious interference with a contract are: "(1) the existence of a valid and enforceable contract; (2) defendant's knowledge of the existence of the contract; (3) defendant's intentional inducement of breach of the contract; (4) the absence of justification; and (5) damages resulting from defendant's wrongful inducement of the breach." *Melton v. Ousley*, 925 N.E.2d 430, 440 (Ind. Ct. App. 2010) (*citing Levee v. Beeching*, 729 N.E.2d 215, 221 (Ind. Ct. App. 2000)). In order to adequately allege the absence of justification, thus satisfying the fourth element for establishing tortious interference, a plaintiff must do more than merely assert that the defendant's conduct was unjustified. *Morgan Asset Holding Corp. v. CoBank*, 736 N.E.2d 1268, 1272 (Ind. Ct. App. 2000) (holding a "conclusory statement" that a defendant lacked justification for its alleged interference was insufficient to establish that such interference was unjustified and therefore tortious). "[T]he existence of a legitimate reason for the defendant's actions provides the necessary justification to avoid liability." *Id.* (*citing Winkler v. V.G. Reed & Sons, Inc.*, 619 N.E.2d 597, 600-01 (Ind. Ct. App. 1993)).

In connection with the tortious interference claim, Konecranes alleges that Mr. Davis and ICS "intentionally induced Nucor and SDI to cancel and/or not renew Purchase Orders with Konecranes." [Dkt. 1 at 8, ¶ 54.] While Konecranes further alleges that "[t]here was no justification for [Mr.] Davis and ICS to interfere with those contractual relationships," [*id.* at 8, ¶ 55], this allegation conflicts with other allegations in the Complaint where Konecranes alleges that Mr. Davis and ICS induced Nucor, SDI and others to break their contracts with Konecranes, or not renew them, so that ICS could gain their business. [*See, e.g., id.* at 5, ¶ 26 ("Since ICS

4

hired [Mr.] Davis, [Mr.] Davis and ICS have obtained Purchase Orders from Nucor and SDI, and possibly other customer(s), for work that Konecranes had previously provided to [them]"); 6, ¶ 29 ("Since [Mr.] Davis resigned from Konecranes, [Mr.] Davis and ICS have been actively involved in soliciting Nucor, SDI, Alcoa, and other customer(s) to induce [them] to change their crane maintenance provider from Konecranes to ICS"); 6, ¶ 30 ("[D]espite the restrictions under [the Agreement], [Mr.] Davis and ICS have used Konecranes Confidential Information to compete unfairly"); and 9, ¶ 58 ("[Mr.] Davis and ICS undertook the foregoing acts to gain or to assist ICS in gaining an unfair competitive advantage over Konecranes").]

The Court agrees with Mr. Davis and ICS, and finds that Konecranes' allegations regarding their solicitation of business for ICS constitutes an acknowledgment by Konecranes that Mr. Davis and ICS were motivated at least in part by a legitimate business interest – their own desire to secure new customers. Konecranes relies upon *Best Flooring, Inc.*, 2013 U.S. Dist. LEXIS 7096, for the proposition that its allegations regarding a lack of justification for Mr. Davis' and ICS's actions are adequate. [Dkt. 20 at 3-4.] But *Best Flooring* is distinguishable from this case for several reasons. First, the court there found that plaintiff had provided "factual allegations indicating that [defendant's] actions were without justification and that [defendant] targeted [plaintiff] because of its 'position as one of the last sub-contractors to work on the homes, to implement [its] strategy of non-payment.'" *Id.* at *15. Conversely, here Konecranes only alleges, without any factual support, that "[t]here was no justification for [Mr.] Davis and ICS to interfere with those contractual relationships," [dkt. 1 at 8, ¶ 55], and simultaneously alleges facts that contradict that allegation – specifically, that Mr. Davis and ICS acted so that Konecranes customers would "change their crane maintenance provider from Konecranes to

ICS," [id. at 6, ¶ 29]. Konecranes' overpleading – a factor not present in *Best Flooring* – is key to the Court's finding that the tortious interference claim fails.

Additionally, unlike this case, *Best Flooring* did not involve two competitors, but rather a bank and a provider of flooring materials. Indiana courts have held that competition is a legitimate interest that establishes justification for purposes of a tortious interference claim, and that is the very reason why Konecranes' tortious interference claim fails here. *See Harvest Life Ins. Co. v. Getche*, 701 N.E.2d 871, 877 (Ind. Ct. App. 1988) (relying upon Restatement (Second) of Torts § 768 (1977) in finding that tortious interference claim failed because defendant's justification for actions was business competition, and stating "[o]ne's privilege to engage in business and to compete with others implies a privilege to induce third persons to do their business with him rather than with his competitors. In order not to hamper competition unduly, the rule stated in [Section 768] entitles one not only to seek to divert business from his competitor generally but also from a particular competitor. And he may seek to do so directly by express inducement as well as indirectly by attractive offers of his own goods or services") (*quoting* Comment b to Restatement (Second) of Torts § 768 (1977)).

The Court finds that Mr. Davis' and ICS's alleged actions relating to gaining business for ICS, taken in the spirit of business competition, constitute justification under Indiana law. *See id.* Accordingly, the Court finds that because Konecranes has pled that Mr. Davis and ICS were motivated at least in part by their own legitimate interest in securing new customers for ICS, they did not act exclusively to injure Konecranes and, thus, Konecranes has effectively pled itself out of Court.[1]

---

[1] Konecranes also argues that its tortious interference claim complies with federal notice pleading requirements. [Dkt. 20 at 2-5.] Mr. Davis and ICS respond that the heightened pleading standard announced in *Morgan Asset Holding Corp.* is substantive rather than procedural in

### B. Unfair Competition

In their Motion to Dismiss, Mr. Davis and ICS argue that Konecranes' unfair competition claim is not cognizable under Indiana law because relevant portions of the Indiana Uniform Trade Secret Act, Ind. Code § 24-2-3-1(b) and (c) (the "IUTSA"), "'[abolish]…causes of action for theft or misuse of confidential, proprietary, or otherwise secret information falling short of trade secret status….'" [Dkt. 15 at 7 (*quoting HDNet LLC v. N. Am. Boxing Council*, 972 N.E.2d 920, 924 (Ind. Ct. App. 2012)).] In response, Konecranes attempts to distinguish the facts in *HDNet* from those here. Specifically, Konecranes notes that *HDNet* did not involve an "employee's use of confidential information obtained through former employment for the benefit of the employee or a competitor of the former employer," which Konecranes argues is "a recognized version of Indiana's unfair competition claims." [Dkt. 20 at 5 (*citing Fan Action, Inc. v. Yahoo! Inc.*, 830 F.Supp.2d 584, 591 (N.D. Ind. 2011)).] Mr. Davis and ICS argue in their reply that the court in *Fan Action* applied Tennessee law to the unfair competition claim, that it referenced the IUTSA "in passing," and that *Fan Action* was decided before *HDNet*. [Dkt. 21 at 6.]

Konecranes' unfair competition claim is premised, at least in part, on Mr. Davis' and ICS's alleged use of Konecranes' confidential information to gain the business of Konecranes' former customers. [*See, e.g.*, dkt. 1 at 5-6, ¶¶ 27, 30-31.] The *HDNet* court concluded that the IUTSA preempts common law claims based on misappropriation of trade secrets, and that if the misappropriated information is not a trade secret, "the plaintiff has no legal interest upon which

---

nature, and therefore this Court should require more than mere notice pleading since a federal court sitting in diversity must apply the appropriate state law to substantive issues. [Dkt. 21 at 4-5.] The problem here, however, is not so much that Konecranes' pleadings were insufficient, but rather that Konecranes has specifically pled facts that undermined the cause of action it sought to assert. Accordingly, the Court need not decide this issue.

to base his or her claim" anyway. *HDNet LLC*, 972 N.E.2d at 925 (following approach that Uniform Trade Secret Act "'abolishes all free-standing alternative causes of action for theft or misuse of confidential, proprietary, or otherwise secret information falling short of trade secret status (e.g. idea misappropriation, information piracy, theft or commercial information, etc.)'") (*quoting BlueEarth Biofuels, LLC v. Hawaiian Elec. Co.*, 235 P.3d 310, 321 (Haw. 2010)).

While the *Fan Action* court arguably recognized that the use of confidential information by an employee or former employee to benefit a competitor might support an unfair competition claim, 830 F.Supp.2d at 591, the Court does not find *Fan Action* authoritative because it was decided almost a year before *HDNet*.[2] The Court finds the more recent *HDNet* decision, by the Indiana Court of Appeals, to better reflect the current state of Indiana law regarding unfair competition claims in this context, and further finds that the unfair competition claim fails as a matter of law.[3]

## IV.
### CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss Counts III and IV of Plaintiff's Complaint for Injunctive Relief and Damages, [dkt. 14]. Konecranes'

---

[2] Mr. Davis and ICS also argue in their reply that *Fan Action* is not relevant because the court applied Tennessee law to the unfair competition claim. The Court is not convinced that is correct. Specifically, the *Fan Action* court stated "[a]ssuming without deciding that Tennessee law governs,…[i]n both Indiana and Tennessee, the claim of unfair competition is a subspecies of tort relating to improper interference with business or contractual relations." *Id.* at 591. The court went on the address unfair competition claims while referring to the laws of both Tennessee and Indiana.

[3] The Court notes that, despite the fact that the unfair competition claim fails because it is based on the misuse of confidential information and thus preempted by the IUTSA, Konecranes is not left without a remedy. As the *HDNet* court made clear, the IUTSA "does not preempt claims for misappropriation of information or ideas that are protected by contract." *HDNet LLC*, 972 N.E.2d at 925. Indeed, Konecranes has asserted a breach of contract claim based on Mr. Davis' use of Konecranes' confidential information in alleged contravention of the Agreement. [Dkt. 1 at 6-7, ¶ ¶ 35-42.] It simply cannot recover through an unfair competition claim.

tortious interference with contractual relationships claim (Count III) and its unfair competition claim (Count IV) are **DISMISSED WITH PREJUDICE**. No partial judgment shall issue.

04/12/2013

*[signature]*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

James Dimos
FROST BROWN TODD LLC
jdimos@fbtlaw.com

Kevin Nicholas Tharp
RILEY BENNETT & EGLOFF LLP
ktharp@rbelaw.com

Joel E. Tragesser
FROST BROWN TODD LLC
jtragesser@fbtlaw.com