UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KONECRANES, INC., <br>     *Plaintiff*, <br><br> *vs.* <br><br> BRIAN SCOTT DAVIS AND INDUSTRIAL & CRANE SERVICES, INC., <br>     *Defendants*. <br><br> BRIAN SCOTT DAVIS AND INDUSTRIAL & CRANE SERVICES, INC., <br>     *Counterclaimants*, <br><br> *vs.* <br><br> KONECRANES, INC., <br>     *Counter-Defendants*. | 1:12-cv-01700-JMS-MJD |

## **ORDER**

Presently pending before the Court is Plaintiff/Counter-Defendants Konecranes, Inc.'s ("Konecranes") Motion to Dismiss Defendants/Counterclaimants Brian Scott Davis and Industrial Crane Services, Inc.'s ("ICS") (collectively, the "Defendants") counterclaims against Konecranes for unfair competition and abuse of process. [Dkt. 55.] For the following reasons, the Court **GRANTS** Konecranes' motion.

## I.
### STANDARD OF REVIEW

In considering a motion to dismiss, the Court takes all well-pleaded allegations in the complaint as true and draws all inferences in favor of the non-moving party. *Bielanski v. Cnty. of Kane*, 550 F.3d 632, 633 (7th Cir. 2008) (citations omitted). However, pleadings consisting of mere conclusions of law or recitals of the elements of a cause of action are not entitled to an as-

sumption of truth. *Panwar v. Access Therapies, Inc.*, 2013 WL 320673 at *1 (S.D. Ind. 2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

A claim that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" will be dismissed under Federal Rule of Civil Procedure 12(b)(6). *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

## II.
## BACKGROUND

### A. Procedural History

Konecranes initiated this action against the Defendants on November 19, 2012, alleging the following claims: (I) breach of contract, (II) breach of fiduciary duty and/or duty of loyalty, (III) tortious interference with contractual relationships, and (IV) unfair competition. [Dkt. 1.] The Defendants moved to dismiss the counts for tortious interference with contractual relationships and unfair competition, [dkt. 14], and the Court granted that motion on April 12, 2013, [dkt. 32].

Konecranes filed an Amended Complaint on June 6, 2013, alleging claims for breach of contract and breach of fiduciary duty and/or duty of loyalty. [Dkt. 44.] Specifically, Konecranes asserts that when Mr. Davis was a Konecranes employee, he signed an Employee Noncompetition and Confidentiality Agreement and stood as a fiduciary. [*Id.* at 2-8.] Konecranes alleges that despite this relationship, since resigning, Mr. Davis has disclosed confidential information in his position working for ICS. [*Id.*]

The Defendants filed counterclaims in response to Konecranes' Amended Complaint, alleging unfair competition against ICS and abuse of process against both Defendants. [Dkt. 48.] Konecranes now moves to dismiss those counterclaims. [Dkt. 55.]

**B. Factual Background Relevant to Counterclaims**

For purposes of ruling on the pending motion, the Court accepts as true the factual allegations in Defendants' counterclaim.

Konecranes is a leader in the crane service industry that hires subcontractors to perform industrial crane maintenance services. [Dkt. 48 at 2, ¶¶ 7–8.] ICS is one of the subcontractors that Konecranes has used to perform such services. [*Id.* at 2, ¶ 9.] While performing a job for Konecranes at Eaton Corporation in South Carolina, ICS signed a Subcontract Agreement (the "Agreement") with Konecranes. [*Id.* at 3-4, ¶ 20; dkt. 57.] The Agreement contains a non-competition provision that forbids ICS from engaging in competitive business activity for a period of one year within 150 miles of locations where Konecranes is conducting business. [Dkt. 48 at 2, ¶ 11; dkt. 57 at 7.] ICS alleges that on multiple occasions, Konecranes had ICS submit bids to perform work and then shopped those bids to other subcontractors before awarding the contracts to the other subcontractors with lower bids. [Dkt. 48 at 3, ¶¶ 12–13.] ICS contends that by forcing it to enter into a non-competition agreement and shopping its bids to other subcontractors, Konecranes engaged in unfair competition by essentially freezing ICS out of the market. [*Id.* at 4, ¶ 22.]

Mr. Davis and ICS have both worked for Konecranes on various projects for Nucor Sheet Metal Group ("Nucor") in Crawfordsville, Indiana. [Dkt. 44 at 5, ¶ 20.] After Konecranes awarded a subcontract on one of Nucor's order to other subcontractors, Nucor requested that ICS be reinstated as the subcontractor to perform the work. [Dkt. 48 at 3, ¶ 14.] Nucor contacted

ICS directly, and ICS began working as a "preferred vendor," such that it was eligible to be awarded contracts on certain Nucor jobs without competitive bidding. [*Id.* at 3, ¶ 15–16.]

After Konecranes filed this lawsuit, Nucor removed ICS from its "preferred vendor" list. [*Id.* at 3, ¶ 18.] The Defendants allege that Konecranes instituted this lawsuit for the sole purpose of interfering with ICS' business relationships with its customers, specifically Nucor. [*Id.* at 5, ¶ 26.] They contend that "Konecranes has willfully abused process in a way that is not proper in the regular conduct of the proceeding by (among other things) informing Nucor and others that Konecranes had filed this suit." [*Id.* at 5, ¶ 27.] The Defendants allege that they have both suffered damages, including lost revenue and customers, as a result of Konecranes' alleged abuse of process. [*Id.* at 5, ¶ 28.]

### III.
### DISCUSSION

**A. Unfair Competition (Count I of Counterclaim)**

The unfair competition counterclaim is between ICS and Konecranes. [Dkt. 48 at 3-4.] It is undisputed that the Agreement between Konecranes and ICS contains an arbitration provision, which provides as follows:

> All claims, disputes and matters in question arising out of, or relating to, this Agreement or the breach thereof, except for claims which have been waived by the making or acceptance of final payment and the claims excluded or limited herein shall be resolved by mediation or arbitration in accordance with commercial arbitration rules adopted by the American Arbitration Association. The provisions for mediation and arbitration shall be specifically enforceable under the law of the State where the Project is performed. The site for mediation and arbitration shall be at the Project site, or in Springfield, Ohio, as selected by KONECRANES, unless required otherwise by KONECRANES' agreement with Owner.

[Dkt. 57 at 14-15.] Konecranes argues that the unfair competition counterclaim arises out of or relates to the Agreement; thus, it is subject to an arbitration provision contained therein. [Dkt. 56 at 3.]

ICS argues that the unfair competition counterclaim is not subject to the arbitration provision because the claim is not based on the interpretation or performance of contractual terms in the Agreement. [Dkt. 68 at 4.] ICS contends that the unfair competition claim relates to work ICS never got to perform because of Konecranes' allegedly unfair competition, thus, the counterclaim is based on a breach of a duty arising in tort, not on a breach of the Agreement. [*Id.*]

In its reply, Konecranes contends that the arbitration provision is "all encompassing" and that "any doubt is to be resolved in favor of arbitration." [Dkt. 69 at 3.] It states that the counterclaim is premised on allegations that the non-competition provision and the shopping of bids gave Konecranes an unfair competitive advantage. [*Id.*] According to Konecranes, because the non-competition provision is at the heart of the counterclaim, it is illogical to find that it is not related to the Agreement. [*Id.*]

A district court cannot compel arbitration outside of its district. *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 808 (7th Cir. 2011). Thus, "a Rule 12(b)(3) motion to dismiss for improper venue, rather than a motion to stay or to compel arbitration, is the proper procedure to use when the arbitration clause requires arbitration outside the confines of the district court's district." *Id.* When ruling on a motion to dismiss for improper venue, the Court is "not obligated to limit its consideration to the pleadings." *Id.* at 809-10 (quoting *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005)). Thus, it is proper for this Court to consider the Agreement between Konecranes and ICS at issue. [Dkt. 57.]

Arbitration provisions contemplating all claims "arising out of, or relating to" an agreement between parties have been interpreted very broadly, creating a presumption of arbitrability. *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 910 (7th Cir. 1999). In fact, the Indiana Supreme Court has described such provisions as having "all-encompassing language." *Nat'l Wine & Spirits, Inc. v. Ernst & Young, LLP*, 976 N.E.2d 699, 706 (Ind. 2012). It is well established that any doubt concerning the scope of the arbitration clause is resolved in favor of arbitration as a matter of federal law. *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012) (citing *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

The phrase "arising out of" reaches "all disputes having their origin or genesis in the contract, whether or not they implicate interpretation or performance of the contract per se." *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 642 (7th Cir. 1993). In *Sweet Dreams*, the plaintiff's claim to rescind the parties' marketing agreement was subject to an "arising out of" arbitration provision because the dispute had its origins in the agreement. *Id.* Despite the plaintiff's intention to cancel the very agreement in which the provision existed, the Seventh Circuit found the claim to be arbitrable because "any dispute between contracting parties that is in any way connected with their contract could be said to 'arise out of' their agreement and thus be subject to arbitration under a provision employing this language." *Id.*

Moreover, a party cannot avoid an arbitration provision by "casting its complaint in tort." *Id.* at 643 (citing *In re Oil Spill*, 659 F.2d 789, 794 (7th Cir. 1981)). Therefore, claims for fraudulent inducement and interference with business relations fall within an arbitration provision because they are related to the subject matter of the agreement. *Id.* Similarly, a plaintiff's tortious interference claim for soliciting an employee arises "from the very heart of the relationship" be-

tween the parties as distributor and manufacturer and is therefore arbitrable. *Kiefer*, 174 F.3d at 910; *see also Precision Homes of Indiana, Inc. v. Pickford*, 844 N.E.2d 126, 133 (Ind. Ct. App. 2006) (finding claims for assault, battery, and false imprisonment subject to arbitration because they arose from a dispute between owner and contractor about the condition of the property's foundation). Parties can choose to expressly exempt certain claims from arbitration, including post-sale causes of action. *Hoopes v. Gulf Stream Coach, Inc.*, 2012 WL 1029352 (N.D. Ind. 2012) (granting motion to dismiss post-sale claims including consumer protection violations and breach of warranties because the parties did not exclude them from the arbitration provision in the purchase agreement); *see also United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. TriMas Corp.*, 531 F.3d 531, 539 (7th Cir. 2008) (noting that no evidence was presented that the scope of the arbitration provision was narrowed to exclude litigation over a certain topic).

    The Court concludes that ICS' unfair competition counterclaim "arises out of" the Agreement because it originates from the relationship between ICS and Konecranes set forth in the Agreement. Just as in *Kiefer*, where the tortious interference claim arose from the parties' distributor-manufacturer relationship, the unfair competition counterclaim in this case arises from the subcontractor-contractor relationship set forth in the Agreement. Tellingly, ICS specifically points to the non-competition provision in the Agreement as part of the basis for its counterclaims. [Dkt. 48 at 2, ¶ 11.] ICS cannot remove its unfair competition counterclaim from the scope of the arbitration provision simply by casting it in tort. *Sweet Dreams*, 1 F.3d 643. In fact, the tort of unfair competition seems to have a tighter nexus to the commercial contract in this case than the assault, battery, and false imprisonment claims found to be within the scope of the arbitration provision in *Precision Homes*. 844 N.E.2d at 133. Moreover, while ICS and

Konecranes could have bargained for a narrower arbitration provision or exempted certain causes of action from its scope, there is no evidence that they did so. *United Steel*, 531 F.3d at 538.

For these reasons, the Court concludes that the unfair competition counterclaim is subject to the arbitration provision in the Agreement. That provision contemplates arbitration in either Ohio or South Carolina (the "Project site" referenced in the Agreement), and the Court cannot compel arbitration outside this District. Accordingly, the Court dismisses ICS' unfair competition counterclaim for improper venue. *Faulkenberg*, 637 F.3d at 808.

**B. Abuse of Process (Count II of Counterclaim)**

Both of the Defendants allege that two of Konecranes' actions give rise to their abuse of process counterclaim: 1) filing the Complaint, and 2) informing non-party Nucor about the lawsuit. [Dkt. 48 at 5, ¶ 27.] Konecranes moves to dismiss this counterclaim because it contends that the filing of its Complaint was procedurally and substantively proper, as its purpose was to initiate this lawsuit. [Dkt. 56 at 5.] Additionally, Konecranes argues that informing Nucor about the lawsuit was not an abuse of process because informing a non-party does not constitute process. [*Id.*]

The Defendants contend that Konecranes filed this lawsuit with ill intent to interfere with their business relationships and that Konecranes effectuated that intent by notifying ICS' customers of the existence of the lawsuit. [Dkt. 68 at 5.] They contend that "process" should be interpreted broadly as any use of "judicial machinery," including not only the filing of a complaint but the additional step of notifying a non-party. [*Id.* at 7.]

*1) Applicable Law*

To maintain an abuse of process claim, the claimant must prove: (1) an ulterior purpose or motive, and (2) a willful act in the use of process not proper in the regular conduct of the pro-

ceeding. *Kalwitz v. Kalwitz*, 934 N.E.2d 741, 753 (Ind. Ct. App. 2010). The second element asks whether the use of process was a legitimate use of the judicial system. *Id.* (citing *Reichhart v. City of New Haven*, 674 N.E.2d 27, 32 (Ind. Ct. App. 1996)). A party is not liable if the legal process has been used to accomplish an outcome that it was designed to accomplish. *Watson v. Auto Advisors, Inc.*, 822 N.E.2d 1017, 1029 (Ind. Ct. App. 2005) (citing *Reichhart*, 674 N.E.2d at 31); *Groen v. Elkins*, 551 N.E.2d 876, 878–79 (Ind. Ct. App. 1990) (finding a party that "has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions" has not abused process).

"The starting point for analysis of an abuse of process claim is to determine whether the [counter-]defendant employed an improper process, not the [counter-]defendant's motivation in employing that process." *Panwar v. Access Therapies, Inc.*, 2013 WL 320673 at *2 (S.D. Ind. 2013) (citing *Reichhart*, 674 N.E.2d at 30 (requiring party to show "improper process" before examining motive)). "Process" is defined as "action undertaken by a litigant in pursuing a legal claim." *Reichhart*, 674 N.E.2d at 32. It requires the use of "the judicial machinery." *Id.* Thus, an abuse of process claim can be predicated upon the improper filing of a complaint. *Estate of Mayer v. Lax, Inc.*, --- N.E.2d ---, 2013 WL 5516465 at *14 n.7 (Ind. Ct. App. 2013). Other examples of process include recruiting a litigant, taking efforts to deprive a party of actual notice of a motion, making false allegations in a complaint, and pursuing attorney's fees not incurred. *Reichhart*, 674 N.E.2d at 32. In *Brooks v. Harding*, because the statute of limitations barred an abuse of process claim based on the complaint, the claimant alleged several other uses, such as executing a warranty deed, inducing the execution of a corrective quitclaim deed, and issuing a title insurance commitment. 2001 WL 548098 at *6 (S.D. Ind. 2001). *Brooks* held that "most of these alleged uses of process do not constitute the use of process at all let alone the abuse of pro-

cess." *Id.* at \*7 (finding the only possible uses of process alleged to be the proposing of judgment entry and the obtaining of judgment entry); *Heartland Recreational Vehicles, LLC v. Forest River, Inc.*, 2012 WL 4050301 (N.D. Ind. 2012) (finding that filing documents with the USPTO or the SEC based on the lawsuit was not use of process because "the acts do not involve use of the judicial system").

Where the use of process is procedurally and substantively proper, the party's intent is irrelevant. *Comfax Corp. v. N. Am. Van Lines, Inc.*, 638 N.E.2d 476, 485 (Ind. Ct. App. 1994). *Panwar* dismissed an abuse of process claim because, although there were allegations that the plaintiff brought suit to circumvent required administrative procedures, there was no allegation that the filing of the amended complaint was done for any purpose other than to initiate a lawsuit. 2013 WL 320673 at \*2-3. The lawsuit proceeded along the normal and intended course, with the other side filing an answer and amended answer. *Id.*

A complaint that is filed for a purpose other than resolving a dispute or seeking damages, however, is substantively improper and may give rise to an abuse of process claim. *Estate of Mayer*, 2013 WL 5516465 at \*14 ("There must be evidence that an attorney filed a claim for a purpose other than aiding his or her client in adjudicating his or her claim."). For example, in *Lindsay v. Jenkins*, the party alleging abuse of process had direct evidence that the complaint was substantively improper—specifically, an affidavit that the defendant told a witness that although the plaintiff most likely had immunity, it would cost him more to defend against the allegedly abusive lawsuit than it would cost the defendant to bring it. 574 N.E.2d 324, 326 (Ind. Ct. App. 1991).

### 2) Filing the Complaint

The Court concludes that Konecranes' filing of the Complaint was not an abuse of process because it was used to institute a civil action that is proceeding as the process intended. Similar to the course of litigation in *Panwar*, Konecranes' lawsuit has proceeded normally: Konecranes filed a Complaint, [dkt. 1], the Defendants moved to dismiss two of the four claims, [dkt. 14], Konecranes filed an Amended Complaint setting forth the two claims not challenged in the motion to dismiss, [dkt. 44], and the Defendants answered and filed counterclaims, [dkts. 47; 48]. Unlike *Lindsay*, where there was direct evidence that the lawsuit lacked merit and was instead brought specifically to impose costs upon the defendant, a portion of Konecranes' claims remain and are proceeding. In fact, it is telling that the Defendants did not even move to dismiss half of the claims set forth in Konecranes' Complaint. [Dkts. 1; 14.] Those claims have proceeded through the legal process as intended, with the Defendants filing an answer and counterclaims of their own. For these reasons, the Court concludes that Konecranes' filing of the Complaint did not constitute abuse of process as a matter of law.

### 3) Informing a Non-Party

The Court also concludes that Konecranes' decision to inform non-party Nucor of the pending lawsuit does not give rise to an abuse of process claim. Again, to maintain an abuse of process claim, the claimant must prove, in part, a willful act in the use of process not proper in the regular conduct of the proceeding. *Kalwitz*, 934 N.E.2d at 753. Although the definition of process can be expansive, this Court has not found, nor have the Defendants directed it to, any authority that extrajudicial statements to non-parties regarding a publicly available lawsuit can constitute use of judicial process. And the Defendants do not contend that Konecranes' lawsuit is wholly frivolous, as evidenced by their decision to only move to dismiss half of Konecranes'

claims. Therefore, the Court dismisses the Defendants' abuse of process counterclaim as a matter of law.

## IV.
### CONCLUSION

For the foregoing reasons, the Court **GRANTS** Counter-Defendant Konecranes' Motion to Dismiss. [Dkt. 55.] The Court **DISMISSES** ICS' unfair competition counterclaim **WITHOUT PREJUDICE** for improper venue. The Court **DISMISSES** the Defendants' abuse of process counterclaim **WITH PREJUDICE** because it fails to state a claim as a matter of law. Because other claims remain pending in this action, no partial judgment shall issue at this time.

10/18/2013

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

James Dimos
FROST BROWN TODD LLC
jdimos@fbtlaw.com

Kevin Nicholas Tharp
RILEY BENNETT & EGLOFF LLP
ktharp@rbelaw.com

Joel E. Tragesser
FROST BROWN TODD LLC
jtragesser@fbtlaw.com