UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

KONECRANES, INC.,                    )
     *Plaintiff*,                     )
                                      )
     *vs.*                            )    1:12-cv-1700-JMS-MJD
                                      )
BRIAN SCOTT DAVIS, INDUSTRIAL & CRANE,    )
INC.,                                )
     *Defendants.*                    )

**<u>ORDER</u>**[1]

Plaintiff Konecranes, Inc. ("Konecranes") brings this suit against its former employee, Defendant Brian Scott Davis, and Mr. Davis' subsequent employer, Defendant Industrial & Crane Services, Inc. ("ICS"). [Filing No. 44.] Prior decisions by the Court leave pending only Konecranes' breach of contract and breach of fiduciary duty[2] claims against Mr. Davis.[3] Currently before the Court is Mr. Davis' Motion for Summary Judgment. [Filing No. 73.] For the reasons that follow, the Court **GRANTS** the motion. [Filing No. 73.]

---

[1] As part of the Court's pilot program regarding hyperlinking in Court filings, this Order contains hyperlinks to documents previously filed in this case, and to legal authority. Instead of the citation format "dkt. __ at __" used previously in this case, the Court now uses "Filing No. __, at ECF p. __" as its citation format.

[2] Konecranes alternatively refers to this claim as a breach of loyalty claim. [Filing No. 44, at ECF pp. 7-8.] Both parties, however, cite the standard for a breach of fiduciary duty claim, and, in any event, the distinction between the claims is immaterial for the purpose of the Court's ultimate decision. The Court will therefore refer to the claim solely as a breach of fiduciary duty claim.

[3] The Motion for Summary Judgment is brought on behalf of both Defendants, as both are named in Konecranes' Amended Complaint. [Filing No. 44.] However, the only two claims remaining in the litigation are predicated on Mr. Davis's misconduct, rather than ICS'. Accordingly, the Court refers to Defendants' Motion for Summary Judgment and the arguments contained therein as Mr. Davis'.

# I.
## STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co., 561 F.3d 709, 713 (7th Cir. 2009)*. In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co., 433 F.3d 521, 525 (7th Cir. 2005)*. Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)*.

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus., 325*

F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson*, 325 F.3d at 898. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

## II.
### BACKGROUND

#### A.    Procedural Background

Konecranes originally brought this suit against both Mr. Davis and ICS, alleging four claims: (1) breach of contract against Mr. Davis; (2) breach of fiduciary duty against Mr. Davis; (3) tortious interference with contractual relationships against Mr. Davis and ICS; and (4) unfair competition against Mr. Davis and ICS. [Filing No. 1, at ECF pp. 6-9.] Mr. Davis and ICS moved to dismiss Counts III and IV of Konecranes' Complaint, [Filing No. 14], and the Court granted the motion, [Filing No. 32]. Konecranes subsequently filed a two-count Amended Complaint, reasserting its breach of contract and breach of fiduciary duty claims against Mr. Davis. [Filing No. 44.] Mr. Davis and ICS then brought counterclaims of unfair competition and abuse of process against Konecranes. [Filing No. 48, at ECF pp. 3-5.] Konecranes moved to

dismiss both of these counterclaims, [Filing No. 55], and the Court granted the motion, [Filing No. 76].

Accordingly, remaining in this case are Konecranes' breach of contract and breach of fiduciary duty claims against Mr. Davis. Pending before the Court is Mr. Davis' Motion for Summary Judgment, seeking summary judgment on both of Konecranes' remaining claims. [Filing No. 73.] It is to this motion that the Court now turns.

**B.      Factual Background**

Consistent with the standard of review, the Court draws the following factual background from the undisputed evidence and, if certain evidence is disputed, views that evidence in the light most favorable to the non-moving party.

Konecranes is in the business of providing maintenance services for industrial cranes. [Filing No. 75-1, at ECF p. 1.] Mr. Davis worked for Konecranes from December 1999 until May 2012. [Filing No. 75-1, at ECF p. 1.] At the commencement of his employment, he signed an "Employee Noncompetition and Confidentiality Agreement" ("Confidentiality Agreement"). [Filing No. 80-1.] By signing the Confidentiality Agreement, Mr. Davis agreed to, among other things, "keep secret all Confidential Information," which includes "matters of a business nature, such as information about costs, profits, pricing, markets, sales, lists of customers, and customers contracts," as well as "matters of a technical nature, such as . . . 'know-how' relating to crane and hoist manufacturing, maintenance and service methods." [Filing No. 80-1, at ECF pp. 2-3.] During the last four years of his employment, Mr. Davis held the position of Service Manager, and his responsibilities included soliciting business from Konecranes' customers and supervising the work of Konecranes' technicians. [Filing No. 75-1, at ECF p. 1.]

Todd Williams is the President of ICS.  [Filing No. 75-2, at ECF pp. 1-2.]  He founded ICS after working for Konecranes from July 2000 to February 2003.  [Filing No. 75-2, at ECF p. 1.]  From 2004 to 2012, ICS served as a subcontractor for Konecranes.  [Filing No. 75-2, at ECF p. 2.]  Specifically, ICS served as the subcontractor for Konecranes on projects for Konecranes' customer Nucor Sheet Metal Group ("Nucor").  [Filing No. 75-2, at ECF p. 2]  In 2011, Konecranes provided crane repair services for Nucor's 7500 and 7503 cranes.  [Filing No. 80-4, at ECF pp. 3-4.]  Mr. Davis performed work for Konecranes on both of these Nucor projects and therefore knew specific information about them—*e.g.*, the service methods and procedures, costs, profits, and pricing for the projects.  [Filing No. 80-4, at ECF pp. 3-4.]

In February 2012, Nucor approached Mr. Williams "about ICS working directly for Nucor, and not as a subcontractor to Konecranes."  [Filing No. 75-2, at ECF p. 3.]  The next month—March 2012—Mr. Williams discussed with Mr. Davis the possibility of Mr. Davis leaving Konecranes to work at ICS.  [Filing No. 80-2, at ECF pp. 3-4.]  Once in February and once in March, Nucor issued purchase orders to Konecranes for crane repairs on Nucor cranes 7501 (Purchase Order #551180) and 7502 (Purchase Order #549662).  [Filing No. 75-1, at ECF p. 2.]

The parties dispute several facts regarding these purchase orders, none of which are ultimately material to the Court's decision.  Mr. Davis attests that although one of the purchase orders was issued by mistake, he gave both purchase orders to Konecranes employee Eric Bloodworth.  [Filing No. 75-1, at ECF p. 2.]  Mr. Bloodworth, however, attests that he was not aware of Purchase Order #551180 until Nucor cancelled it in July 2012.  [Filing No. 80-6, at ECF p. 2.]  Relatedly, two other Konecranes employees assert that at no time during Mr. Davis' employment with Konecranes did he make Konecranes aware that any bids were made for these

Nucor projects, or that Nucor issued purchase orders for the projects. [Filing No. 80-4, at ECF pp. 4-5; Filing No. 80-5, at ECF pp. 3-4.]

In late March or early April 2012, Mr. Davis was told by a Nucor employee that ICS was working as a direct vendor for Nucor. [Filing No. 80-3, at ECF p. 3.] Not long thereafter, in May 2012, Mr. Davis informed Konecranes that he was leaving his position of employment. [Filing No. 75-1, at ECF pp. 1-2; Filing No. 80-4, at ECF p. 2.] The parties dispute many of the facts surrounding the circumstances of Mr. Davis' departure from Konecranes. Again, however, these factual disputes are immaterial to the Court's ultimate decision. Mr. Davis attests that he provided Konecranes notice of his intent to leave on May 7, 2012, but that Konecranes employee Jason Villas terminated Mr. Davis' employment on May 11, 2012, effective immediately. [Filing No. 75-1, at ECF pp. 1-2.] Mr. Villas, however, attests that he did not terminate Mr. Davis' employment; instead, Mr. Villas says, Mr. Davis told Konecranes that he was quitting before the two-week notice period. [Filing No. 80-4, at ECF p. 2.] During the interim period— between Mr. Davis' notice to Konecranes and their ultimate separation—Konecranes asked Mr. Davis to transition his projects and information to Konecranes' employee Andrew Grooms. [Filing No. 80-5, at ECF p. 1.] According to Mr. Grooms, Mr. Davis was unable to provide Konecranes with all the information regarding his active and pending work because, according to Mr. Davis, all of the information on his company laptop had been wiped out by a computer virus. [Filing No. 80-5, at ECF p. 2.]

Mr. Davis was hired as a Vice President of ICS on May 14, 2012. [Filing No. 75-1, at ECF p. 3.] In June 2012, Mr. Grooms contacted Mr. Williams about a Nucor crane repair project because Nucor had informed Mr. Grooms that it only wanted ICS repairing its cranes. [Filing No. 75-2, at ECF p. 4; Filing No. 75-6, at ECF pp. 1-2.] About a month later, on July 25, 2012,

Nucor faxed Konecranes a notice that it was cancelling both purchase orders discussed above. [Filing No. 80-4, at ECF p. 4; Filing No. 80-5, at ECF p. 3; *see* Filing No. 75-4.] Although Purchase Order #551180 was dated March 22, 2012, no Konecranes employee other than Mr. Davis knew of its existence. [Filing No. 80-4, at ECF p. 5; Filing No. 80-5, at ECF p. 4.]

The crane repairs that were the subject of the purchase orders were supposed to be performed during the shutdown of a Nucor plant in the spring of 2012. [Filing No. 75-1, at ECF p. 2; Filing No. 75-2, at ECF p. 3.] However, during the shutdown, Nucor decided to delay the repairs. [Filing No. 80-5, at ECF p. 4; *see* Filing No. 75-4, at ECF pp. 1-2.] Although the crane repairs were delayed, Konecranes performed other work at Nucor during the plant shutdown, for which Konecranes used ICS as a subcontractor. [Filing No. 75-1, at ECF pp. 2-3.]

Because the crane repairs were delayed, Nucor put them out for rebid. [Filing No. 80-5, at ECF p. 4.] Mr. Grooms called Nucor to see if Konecranes could rebid for the projects, and according to Mr. Grooms Nucor "reluctantly told [him] yes." [Filing No. 80-5, at ECF p. 4.] Nucor, however, immediately called him back "and said that Konecranes . . . should not waste time requesting these projects because ICS had been on-site at Nucor for three months and that Nucor would now be contracting directly with ICS." [Filing No. 80-5, at ECF p. 4.] True to its representations to Konecranes, Nucor received a bid from—and awarded the crane repair projects to—ICS. [Filing No. 75-1, at ECF p. 3.] Although Mr. Williams prepared all bids on behalf of ICS, Mr. Davis provided him "with the customer's scope of work." [Filing No. 75-1, at ECF p. 3; Filing No. 75-2, at ECF p. 2.] Specifically, Mr. Davis informed Mr. Williams "how many manhours . . . or how much equipment [ICS] would need for the job." [Filing No. 80-3, at ECF p. 5.] He provided this information to Mr. Williams for ICS' bids on Nucor's 7501 and 7502 crane repair projects. [Filing No. 80-3, at ECF p. 5.] These two repair projects were

similar to two repair projects Konecranes performed for Nucor on which Mr. Davis worked as a Konecranes employee.  [Filing No. 80-4, at ECF pp. 3-4.]

### III.
#### DISCUSSION

Mr. Davis moves for summary judgment on Konecranes' state-law breach of contract and breach of fiduciary duty claims.  [Filing No. 74, at ECF pp. 7-11.]  When a party moves for summary judgment on two distinct claims, the Court ordinarily addresses each claim in turn.  But in this case, the Court ultimately concludes that Mr. Davis is entitled to summary judgment on both claims because Konecranes failed to adduce evidence of a common element of each claim: causation.  The basic thrust of both Konecranes' claims is that certain misconduct by Mr. Davis caused Nucor to cancel its crane repair purchase orders with Konecranes and instead contract with ICS to perform the work.  But Konecranes fails to point to any evidence connecting Mr. Davis' alleged misconduct to Nucor's decision to cancel the purchase orders with Konecranes and to instead contract directly with ICS.  This lack of evidence dooms both of Konecranes' claims.

Because the evidence supporting a common element of Konecranes' claims is lacking, the Court will address this common element of each claim together.  Before doing this, however, the Court will set forth the necessary elements of each claim and the parties' arguments regarding them.  The Court will then explain why, assuming all of the other elements of each claim are met, both claims fail due to Konecranes' inability to prove the causation element of each claim.

## A. Breach of Contract

Under Indiana law,[4] "[i]t is well-settled that [t]o recover for a breach of contract, a plaintiff must prove that: (1) a contract existed, (2) the defendant breached the contract, and (3) the plaintiff suffered damage as a result of the defendant's breach." *Duncan v. Greater Brownsburg Chamber of Commerce, Inc.*, 967 N.E.2d 55, 57 (Ind. Ct. App. 2012) (second alteration in original) (citations and quotation marks omitted). The plaintiff "has the burden of demonstrating that the defendant's breach was a substantial factor contributing to the damages." *Hopper v. Colonial Motel Prop., Inc.*, 762 N.E.2d 181, 187 (Ind. Ct. App. 2002); *see Dana Companies, LLC v. Chaffee Rentals*, 1 N.E.3d 738 (Ind. Ct. App. 2013) ("Indiana follows the common law test of causation in contract actions; that is, we decide if a breach was a substantial factor in bringing about the harm, not whether other causes may have contributed.").

Konecranes' breach of contract claim is predicated on Mr. Davis' alleged breach of the Confidentiality Agreement he signed with Konecranes. [Filing No. 44, at ECF pp. 6-7.] Mr. Davis moves for summary judgment on this claim, arguing that there is no evidence that Mr. Davis supplied ICS with Konecranes' confidential information in breach of the Confidentiality

---

[4] A federal court sitting in diversity must apply the choice of law provisions of the forum state. *Storie v. Randy's Auto Sales, LLC*, 589 F.3d 873, 879 (7th Cir. 2009) ("Because the district court's subject matter jurisdiction was based on diversity, the forum state's choice of law rules determine the applicable substantive law."). The parties implicitly agree that Indiana law applies to Konecranes' claims. [Filing No. 74, at ECF pp. 9-10 (citing Indiana law); Filing No. 80, at ECF pp. 13-14 (same).] Absent a disagreement, the Court will apply Indiana law. *Mass. Bay Ins. Co. v. Vic Koenig Leasing*, 136 F.3d 1116, 1120 (7th Cir. 1998); *see Wood v. Mid-Valley, Inc.*, 942 F.2d 425, 426-27 (7th Cir. 1991) ("The operative rule is that when neither party raises a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the federal court sits . . . . *Courts do not worry about conflict of laws unless the parties disagree on which state's law applies*. We are busy enough without creating issues that are unlikely to affect the outcome of the case (if they were likely to affect the outcome the parties would be likely to contest them).") (emphasis added).

Agreement,[5] [Filing No. 74, at ECF pp. 7-8], nor is there evidence that any such breach caused Konecranes to lose business it would have otherwise obtained, [Filing No. 74, at ECF pp. 10-11]. Konecranes responds that Mr. Davis breached the Confidentiality Agreement when he provided Mr. Williams with estimates regarding the manhours and equipment needed for ICS' bid on Nucor's 7501 and 7502 crane repair projects. [Filing No. 80, at ECF pp. 11-13.] Specifically, Konecranes contends that this information constituted confidential information under the Confidentiality Agreement and that Mr. Davis' sharing of it "caused Nucor to cancel purchase orders to Konecranes." [Filing No. 80, at ECF pp. 12-13.]

As set forth in subsection III.C below, the Court assumes that Mr. Davis' estimating the manhours and equipment needed for ICS' bid on the Nucor crane repair projects was in breach the Confidentiality Agreement,[6] but concludes that Konecranes failed to adduce evidence that

---

[5] In his reply brief, Mr. Davis additionally argues that any confidential information he did disclose to ICS was already known to ICS and therefore any breach of the Confidentiality Agreement did not damage Konecranes. [Filing No. 82, at ECF p. 6.] Konecranes filed a surreply brief that responds solely to this argument. [Filing No. 87.] Because the Court grants summary judgment in Mr. Davis' favor on causation rather than on whether a breach occurred, it need not address Mr. Davis' argument or those contained in Konecranes' surreply.

[6] The Court notes that this is a tenuous assumption. Depriving Mr. Davis of his ability to provide information to future employers in support of project bids very well could run afoul of Indiana public policy concerns, which prohibit employers from restricting employees' future use of general skills and knowledge gained during the course of employment. *See Donahue v. Permacel Tape Corp.*, 127 N.E.2d 235, 241-42 (Ind. 1955) ("[W]hile an employer, under a proper restrictive agreement, can prevent a former employee from using his trade or business secrets, and other confidential knowledge gained in the course of the employment, and from enticing away old customers, he has no right to unnecessarily interfere with the employee's following any trade or calling for which he is fitted and from which he may earn his livelihood and he cannot preclude him from exercising the skill and general knowledge he has acquired or increased through experience or even instructions while in the employment."); *see also Buffkin v. Glacier Group*, 997 N.E.2d 1, 11 (Ind. Ct. App. 2013) (collecting cases). However, because the Court grants summary judgment based solely on the lack of causation, it need not ultimately decide this question.

this breach caused Nucor to cancel the purchase orders it previously issued to Konecranes and instead contract with ICS.

###### B. Breach of Fiduciary Duty

Under Indiana law, "[a] claim for breach of fiduciary duty requires proof of three elements: (1) the existence of a fiduciary relationship; (2) a breach of the duty owed by the fiduciary to the beneficiary; and (3) harm to the beneficiary." *Farmers Elevator Co. of Oakville, Inc. v. Hamilton*, 926 N.E.2d 68, 79 (Ind. Ct. App. 2010). Like a claim for breach of contract, a breach of fiduciary duty claim requires the plaintiff to prove that the alleged breach was a "substantial contributing factor" to the alleged harm. *W & W Equipment Co., Inc. v. Mink*, 568 N.E.2d 564, 576 (Ind. Ct. App. 1994). In other words, the plaintiff must prove the harm "result[ed] from the defendant's breach." *FTC v. Think Achievement Corp.*, 2007 WL 3286802, at *4 (N.D. Ind. 2007) (citing *Mink*, 568 N.E.2d at 570-76).

Konecranes' breach of fiduciary duty claim against Mr. Davis is predicated on nearly the same conduct as its breach of contract claim. Specifically, Konecranes alleged that Mr. Davis, while an employee of Konecranes, breached the fiduciary duty he owed to his employer by using Konecranes' confidential information and undertaking acts to solicit Konecranes' customers on behalf of ICS. [Filing No. 44, at ECF pp. 7-8.] Mr. Davis moves for summary judgment on this claim, arguing that there is no evidence that Mr. Davis ever breached the fiduciary duty he owed to Konecranes, [Filing No. 74, at ECF pp. 9-10], and that even if he did breach a fiduciary duty owed to Konecranes, there is no evidence that this breach caused Konecranes to lose any work that it otherwise would have obtained, [Filing No. 74, at ECF pp. 10-11]. Konecranes responds that Mr. Davis breached his fiduciary duty by (1) withholding from Konecranes the Nucor purchase orders he obtained on Konecranes' behalf in February and March 2012; (2) failing to

inform Konecranes that ICS became a direct vendor to Nucor in late March or early April of 2012; and (3) being unable to provide Konecranes with the information and files from his computer before leaving Konecranes and joining ICS. [Filing No. 80, at ECF pp. 14-15.] These breaches, say Konecranes, "caused damage to Konecranes because Nucor cancelled purchase orders a little over two months after [Mr.] Davis left Konecranes for ICS." [Filing No. 80, at ECF p. 15.] Mr. Davis replies that, even assuming he breached his fiduciary duty in each of the three ways Konecranes identifies, Konecranes has failed to adduce any evidence connecting those breaches to the identified harm—namely, Nucor's cancellation of the purchase orders and subsequent awarding of the projects to ICS. [Filing No. 82, at ECF pp. 6-9.]

The Court will assume without deciding that Mr. Davis breached a fiduciary duty owed to Konecranes in the three ways identified in Konecranes' briefing detailed above. [*See* Filing No. 80, at ECF pp. 14-15.] But as discussed in detail below, Mr. Davis is entitled to summary judgment on Konecranes' breach of fiduciary duty claim because it failed to produce evidence that would allow a reasonable jury to conclude that any of these three breaches caused Nucor to cancel Konecranes' purchase orders and award the projects to ICS.

C.     **Causation**

In order to preclude summary judgment on either of its claims, Konecranes must introduce admissible evidence that Mr. Davis' alleged misconduct—breaching the Confidentiality Agreement or his fiduciary duty to Konecranes—caused Nucor to cancel its two purchase orders with Konecranes and subsequently award the projects to ICS. Specifically, Konecranes identified four actions taken by Mr. Davis that purportedly caused it injury: (1) providing Mr. Williams with estimates regarding the manhours and equipment needed for ICS' bid on Nucor's 7501 and 7502 crane repair projects, [Filing No. 80, at ECF pp. 11-13]; (2)

withholding from Konecranes the Nucor purchase orders he obtained on Konecranes' behalf in February and March 2012; (3) failing to inform Konecranes that ICS became a direct vendor to Nucor in late March or early April of 2012; and (4) being unable to provide Konecranes with the information and files from his computer before leaving Konecranes and joining ICS, [Filing No. 80, at ECF pp. 14-15].  Therefore, for either of Konecranes' claims to survive summary judgment, it must present evidence that links any of these four actions to Nucor's decision to cancel the Konecranes purchase orders and subsequently award the cancelled projects to ICS.

The only evidence explaining *why* Nucor cancelled the purchase orders and awarded the projects to ICS was introduced by Konecranes (or contained in an email written by a Konecranes employee).  This evidence reveals that Nucor made its decisions for purely business reasons unrelated to Mr. Davis' alleged misconduct.  As to the cancellation of the purchase orders, Konecranes employee Mr. Grooms attests that Nucor informed him that it "changed the time for this work, so the projects needed to be rebid." [Filing No. 80-5, at ECF p. 4.]  Nucor's cancellation notices set forth the same justification.  [Filing No. 75-4, at ECF p. 1 ("Job was not done during spring outage and job is going to be requoted."); Filing No. 75-4, at ECF p. 2 ("Job was for spring outage and not done – job is being requoted").]  Regarding Nucor's justification for awarding the cancelled projects to ICS rather than Konecranes, Mr. Grooms acknowledged to Mr. Williams in June 2012 that Nucor "want[s] [ICS] or nobody," [Filing No. 75-6, at ECF p. 1], and that "[Nucor] will not have anyone else weld on their cranes."  [Filing No. 75-6, at ECF p. 2.]  A month later—on the same day Konecranes received the cancelled purchase orders from Nucor—Mr. Grooms emailed other Konecranes' employees that Nucor informed him "that ICS has been an onsite contractor for 3 months, and Nucor will be contracting [with] ICS direct

13

now," and furthermore, "[Nucor] do[es] not want Konecranes to be the in between company now." [Filing No. 75-5, at ECF p. 1.]

Simply put, this evidence reveals that Nucor cancelled the purchase orders because it changed the time for the work, and that it awarded the projects to ICS because Nucor liked ICS' work and saw no reason for Konecranes to operate as a middle man. These are run-of-the-mill business justifications that are entirely unrelated to Mr. Davis' alleged misconduct.[7] Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Industries, Inc.*, 325 F.3d 892, 901 (7th Cir. 2003), yet Konecranes failed to submit any evidence connecting the reasons for Nucor's decisions to Mr. Davis' alleged misconduct.[8] Notably, for reasons about which the Court may speculate,[9] neither Konecranes nor Mr. Davis tendered

_____

[7] It is undisputed that "Konecranes 'marks up' its subcontractors' contract amounts, as nearly all general contractors do." [Filing No. 75-2, at ECF p. 2.] Thus it is unsurprising that Nucor would want to cut out Konecranes as the middle man. To succeed on its claims, Konecranes would need to submit evidence that Mr. Davis' misconduct in some way caused Nucor to make this business decision, but it has not done so.

[8] Indeed, with respect to causation, Konecranes offers only two conclusory statements, wholly unsupported with citations to record evidence, that Mr. Davis' conduct caused Nucor to cancel the purchase orders and award the projects to ICS. [*See* Filing No. 80, at ECF pp. 12-13 (arguing that Mr. Davis "provided Confidential Information to ICS to obtain work from Konecranes' customer Nucor . . . [that] caused Nucor to cancel purchase orders to Konecranes"); Filing No. 80, at ECF p. 15 (arguing that Mr. Davis' three alleged breaches of his fiduciary duty "caused damage to Konecranes because Nucor cancelled purchase orders").] This is perhaps because such evidence may not exist given that almost all of Mr. Davis' alleged misconduct occurred *after* Nucor initially approached ICS in February 2012 about directly contracting with ICS. [Filing No. 75-2, at ECF p. 3.] The only misconduct to which Konecranes points that occurred at or before that time is Mr. Davis' failure to inform Konecranes about the February 2012 purchase order. But, as discussed further herein, there is no evidence that this failure caused Nucor to cancel the purchase orders five months later.

[9] One possible explanation is that Nucor simply does not want to be involved in the litigation between these parties. As explained above, prior to this litigation, Nucor stopped contracting with Konecranes and instead directly contracted with ICS. And, according to ICS, this suit

14

affidavits or deposition testimony of any Nucor employees. Such evidence would be the most likely avenue for Konecranes to link Nucor's decisions to Mr. Davis' alleged misconduct. But Nucor's version exists solely in form of the justifications Nucor provided to Konecranes, which, as already stated, have nothing to do with Mr. Davis' alleged misconduct. This evidence forecloses Konecranes from proving causation.

In conclusion, there is no evidence that Mr. Davis' estimation of manhours and equipment for ICS' bid on the cancelled projects led to Nucor's selection of ICS over Konecranes. And there is no evidence that the even more remote alleged conduct—Mr. Davis' withholding from Konecranes the original Nucor purchase orders, failure to inform Konecranes that ICS became a direct vendor to Nucor, or inability to provide Konecranes with the information and files from his computer when he left his position—influenced Nucor's actions. Without evidence that would permit a reasonable inference of such causation, the Court must grant summary judgment to Mr. Davis. *See Buckner v. Sam's Club, Inc.*, 75 F.3d 290, 293-94 (7th Cir. 1996) (affirming the district court's grant of summary judgment because the plaintiffs "had no evidence linking [the harm] with [the defendant's] alleged [misconduct]; their case lacked the critical element of causation").

### IV.
#### CONCLUSION

For the reasons explained, the Court **GRANTS** Mr. Davis' Motion for Summary Judgment. [Filing No. 73.] Judgment will issue accordingly.

---

caused Nucor to remove it from Nucor's preferred vendor list. [Filing No. 48, at ECF p. 3.] This may very well have been Nucor's attempt to remove itself from the dispute between the parties, and could explain the absence of evidence directly from Nucor.

**<u>Distribution via ECF</u>:**

James  Dimos
FROST BROWN TODD LLC
jdimos@fbtlaw.com

Joel E. Tragesser
FROST BROWN TODD LLC
jtragesser@fbtlaw.com

Kevin Nicholas Tharp
RILEY BENNETT & EGLOFF LLP
ktharp@rbelaw.com